DECISION AND JUDGMENT ENTRY
Richard Norman appeals from a judgment of the Scioto County Court of Common Pleas that revoked his probation.
In 1992, appellant entered a guilty plea to one count of aggravated trafficking in LSD in violation of R.C. 2925.03(A)(5), a second-degree felony. He was ultimately sentenced to three to fifteen years imprisonment, with three years being actual incarceration. In March 2000, appellant was granted shock probation under R.C. 2947.061. In July 2000, appellant was arrested by the Portsmouth, Ohio Police Department for Child Endangering.[1] The arrest was based on an altercation between appellant and his thirteen-year-old daughter, Chelsea, on the campus of Shawnee State University in Portsmouth.
Without conducting a hearing, the trial court found probable cause to believe that appellant had violated the terms of his probation based on his arrest. A Notice of Hearing was sent to appellant's attorney and the matter proceeded to a revocation hearing. After the trial court revoked appellant's probation, Norman appealed and raises the following assignments of error for our review:
 ASSIGNMENT OF ERROR NO. 1 APPELLANT WAS DENIED DUE PROCESS BECAUSE HE WAS NOT AFFORDED A PRELIMINARY HEARING TO ESTABLISH PROBABLE CAUSE PRIOR TO A FINAL REVOCATION HEARING.
 ASSIGNMENT OF ERROR NO. 2 THE COURT ERRED IN REVOKING APPELLANT'S PROBATION BECAUSE THE EVIDENCE WAS NOT SUBSTANTIAL AND COMPETENT TO ESTABLISH THAT APPELLANT HAD VIOLATED R.C. 2919.22(B)(3).
 ASSIGNMENT OF ERROR NO. 3 APPELLANT WAS DENIED DUE PROCESS WHEN THE TRIAL COURT FAILED TO ISSUE SPECIFIC FINDINGS OF EVIDENCE RELIED ON AND THE STANDARD IN WHICH IT WEIGHED THE EVIDENCE IN REVOKING HIS PROBATION.
In his first assignment of error, appellant argues that he was denied due process because he was not afforded a preliminary hearing to determine probable cause. The United States Supreme Court has held that the Fourteenth Amendment to the Constitution ensures certain rights during both probation and parole revocation. State v. Bainter (July 29, 1994), Pickaway App. No. 93CA32, unreported, citing Gagnon v. Scarpelli
(1973), 411 U.S. 778, 782, and Morrissey v. Brewer (1972), 408 U.S. 471,485; see, also, State v. Miller (1975), 42 Ohio St.2d 102, 104, and Statev. Layne (Mar. 4, 1992), Scioto App. No. 1874, unreported. In Gagnon, the United States Supreme Court stated that the minimum due process requirements necessary in a probation revocation proceeding include the right to a preliminary and a final revocation hearing under the conditions specified in Morrissey, supra.
At the preliminary hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decision-maker, and a written report of the hearing. Morrissey, supra, at 487. The final hearing is less summary in nature because the decision under consideration is the ultimate decision to revoke rather than a mere determination of probable cause. However, the "minimum requirements of due process" include very similar elements: "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking [probation or] parole."Morrissey, supra, at 489.
In this case, appellant challenges the lack of a preliminary hearing for the first time on appeal. Appellant's failure to raise his objection to the trial court waives any error. See State v. Delaney (1984),11 Ohio St.3d 231; In Matter of Cottrill (July 9, 1998), Ross App. No. 97CA2355, unreported; Layne, supra. However, a party who fails to object to a due process violation at the hearing may still prevail on appeal if the procedural error rises to the level of plain error under Crim.R. 52(B). In the Matter of Cottrill, supra; Gilreath, supra. An appellate court will take notice of plain error with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. Plain error does not exist unless it can be said that the outcome of the hearing would have been otherwise but for the error. Statev. Biros (1997), 78 Ohio St.3d 426, 436.
Appellant argues in essence that it was plain error for the trial court to issue a probable cause finding outside the context of a hearing, and that he was prejudiced by the error because he was denied the right to obtain disclosure of the identity of several witnesses prior to the revocation hearing. We have reviewed the record and find that appellant was not prejudiced by the failure to conduct a preliminary hearing.
The revocation hearing in this case was conducted over a two-day period. The first day, Tony Simpson, a security officer at Shawnee State University, testified that he received a call from two individuals at the library on the university campus indicating that someone was in front of the library "getting on a kid." He testified that he arrived on the scene after appellant had left, but that he talked to three university students who told him that they had witnessed the confrontation. Appellant objected to Mr. Simpson's testimony on the basis that he was not an eyewitness to the spanking and thus he had no personal knowledge of it. The trial court overruled the objection, allowed Simpson to testify but also continued the hearing so that it could hear testimony from the three university students.
Six days later, appellee produced the students at the hearing, all of whom testified about the incident. Appellant cross-examined each witness about their ability to observe the incident, and their perceptions of the time period over which appellant was allegedly hitting his child. Each witness described a struggle between appellant and his daughter, and each witness estimated that appellant struck his daughter at least ten times.
Appellant claims that he was prejudiced by not knowing the identity of these witnesses prior to the revocation hearing. However, appellant fails to indicate how his revocation proceeding would have been different if the identity of these witnesses would have been disclosed at a preliminary "probable cause" hearing. Appellant does not argue that his defense strategy would have been different, or that he was denied effective cross-examination. We note that appellant had six days to prepare for cross-examination of the university students, which we believe was sufficient given the nature of their testimony. Upon review of the record, we cannot say that the trial court's failure to conduct a preliminary hearing prejudiced appellant in asserting his due process rights under Gagnon. Having found no plain error, the first assignment of error is overruled.
In his second assignment of error, appellant argues that there is insufficient factual support for the finding that he committed an act of felony child endangering as charged in the Notice of Hearing. Appellant essentially challenges the manifest weight of the evidence to support the trial court's finding. "In a probation revocation proceeding, the state need not produce evidence of guilt beyond a reasonable doubt. Instead, the state must present substantial proof that the defendant has violated the terms of probation." State v. Steen (June 28, 1994), Vinton App. No. 93CA490, unreported. This is akin to a preponderance of the evidence burden of proof. State v. Puckett (Nov. 12, 1996), Athens App. No. 96CA1712, unreported. Accordingly, we review this assignment of error under the "some competent, credible evidence" standard set forth in C.E.Morris Constr. Co. v. Foley (1978), 54 Ohio St.2d 279, 280. Id.
As an initial matter, appellant complains that he was not afforded proper notice of the conduct that formed the basis of the charge against him. Appellant was notified that revocation of his probation was being based on his arrest for "Endangering Children (F-3)." Appellant argues that in order for child endangering to constitute a third degree felony under R.C. 2919.22(B)(3), the act must create "a substantial risk of serious physical harm to the child."[2] Appellant argues, and we agree, that there is insufficient factual evidence in the record to establish this element of felony child endangering. However, appellant overlooks the fact that R.C. 2919.22(B)(1), which involves "[A]buse of the child," also may be a felony of the third degree when it results in serious physical harm to the child. See R.C. 2919.22(E)(1)(c). When coupled with the generic notice that the violation was based upon "Endangering children (F-3)," the availability of R.C. 2919.22(B)(1) is important. Appellant's argument assumes that only subsection (B)(3) was applicable to the revocation proceedings. Clearly, that is not the case.
The misdemeanor version of R.C. 2919.22(B)(1) is an offense of an "inferior degree" to its felony counterpart. An offense is an "inferior degree" of a charged offense where its elements are identical to or are contained within the charged offense, except for one or more mitigating (or aggravating) elements. See State v. Deem (1988), 40 Ohio St.3d 205,208 et seq. Under R.C. 2919.22(B)(1) the presence of serious physical harm "aggravates" child endangering by abuse from a misdemeanor, see R.C. 2919.22(E)(2)(a), to a felony, see R.C. 2919.22 (E)(2)(c). This is significant because the fact finder in a criminal case can consider three types of lesser offenses in reaching its verdict: 1) attempts; 2) lesser included offenses; and 3) offenses of an inferior degree. Id. at 208. Proceeding on the lesser offenses complies with the notice requirements of the United States and Ohio Constitutions. Id. at 210. In the criminal context, indictment on a greater offense simultaneously charges a defendant with lesser offenses. It is not necessary that the indictment explicitly set forth each lesser offense. See State v. Lytle (1990),49 Ohio St.3d 154, 157; Deem, supra. We conclude that the same principle applies in probation proceedings, where the concepts of due process, including notice, are less rigorously enforced. Thus, appellant had sufficient notice that his probation could be "violated" if the evidence showed that he committed misdemeanor child endangering under R.C.2919.22(B)(1).
Moreover, we do not believe that appellant was confused or misled in his defense. Appellant admitted that he struck his daughter several times with an open hand. His defense focused on the excessiveness and duration of the punishment, and whether his conduct crossed the line from acceptable parental discipline into criminally culpable behavior. Appellant's defense also focused on alternative theories for the child's bruises. Furthermore, appellant did not object to the trial court's findings at the hearing. If appellant had been confused regarding the allegations, and had been defending solely against a felony child endangering charge, he should have objected and brought the misunderstanding to the attention of the trial court. Accordingly, we find that appellant was afforded sufficient notice of the allegations against him to allow for an effective opportunity to present a defense.
Turning to appellant's specific assignment of error, we conclude that there was some competent, credible evidence presented to the trial court to support a finding that appellant committed an act of child endangering, in violation of the terms and conditions of his probation. Appellant testified that he didn't abuse his daughter, but he did spank her. He indicated that the incident occurred while they were on the campus of Shawnee State University trying to find a tutor for his daughter. The child became upset when he told her that he had to meet with his probation officer, and that he could not take her directly home after they left the campus. Appellant testified that his daughter kicked him and bit him and that he "turned her over and gave her five good licks." She bit him a second time and he gave her five more hits. He testified that the first five hits were "pretty light," but that the second five hits were "a little bit harder." He did not believe that he struck his daughter hard enough to leave marks.
Linda Brown, an investigator with Children's Services, testified that she interviewed the child approximately three to four hours after the incident. The child told Ms. Brown that she bit appellant and ran away and that appellant had spanked her. She indicated that it hurt very badly and that she had never had a spanking like that before. She said that appellant just kept hitting her. Ms. Brown took photographs of marks on the child's back and buttocks. She testified that the child had red marks over 75% of her back area, which was consistent with what the child had told her; and that the child had bluish red marks at her waistline and buttocks that had begun to turn into a bruise. Photographs confirmed these observations.
The trial court also heard testimony from the three university students who gave a fairly consistent account of the incident. Each student indicated that she saw appellant near the university library striking a girl. Two of the students estimated that the hitting went on for five minutes. The other student estimated that it went on for two minutes. Each student testified that appellant struck the girl at least ten times. One of the students indicated that she could actually hear the blows and that it made her sick. Another student indicated that she had never seen anyone spank a child that hard before, and that the blows were hard enough to hurt a grown man. She said that she became nervous and mad at the sight of appellant striking the girl and that she wanted to confront him but didn't. She did call campus security. She testified that she was sick for a few days after the incident worrying about the wellbeing of the child.
Having considered the record, we find that there was some competent, credible evidence presented to allow the trial court to find that appellant's conduct went beyond proper and reasonable discipline of a child, and that he committed an act which constituted misdemeanor child endangerment under R.C. 2919.22(B)(1). See State v. Howard (Dec. 3, 1999), Lake App. No. 98L265, unreported (discussing the sufficiency of the evidence needed to support a criminal conviction under R.C.2919.22(B)(1)). Appellant's second assignment of error is overruled.
In his final assignment of error, appellant argues that he was denied his right to a written statement by the factfinder in this case. Following a revocation decision, a probationer has a right to receive a written statement concerning the evidence relied on and the reasons for revoking probation. Gagnon, supra. The written statement requirement helps to ensure accurate factfinding concerning any alleged violation and provides an adequate basis for review to determine if the decision rests on permissible grounds and is supported by the evidence. Black v. Romano
(1985), 471 U.S. 606. An oral statement by the court can satisfy this requirement if it sufficiently informs the probationer of the reasons for revoking probation and provides an adequate record for review. State v.Delaney (1984), 11 Ohio St.3d 231.
At the hearing, the trial court made an oral statement that we find satisfied the due process requirement in Gagnon. The court stated, "I've seen the pictures and I've heard the testimony and this was more than a spanking. I consider it a beating, consider it an assault." This statement provided appellant with sufficient notice of the reasons for revoking his probation, and the evidence relied on to make the determination. Moreover, it was sufficient to allow for effective appellate review in this case. Appellant's third assignment of error is overruled.
The judgment of the trial court is affirmed.
JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ________________________ William H. Harsha, Judge
Abele, P.J. Kline, J.: Concur in Judgment and Opinion.
[1] In May 2000, the court found appellant to be in violation of the terms of his probation for another matter but continued his probation.
[2] Ohio Revised Code Section 2901.01(A)(3) defines serious physical harm to a person as any of the following:
 (a) any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) physical harm that carries a substantial risk of death; (c) any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain. (emphasis supplied)
A substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." See Ohio Revised Code2901.01(A)(8).